IN THE CIRCUIT COURT OF THE TWELFTH JUDICIAL CIRCUIT
IN AND FOR MANATEE COUNTY, FLORIDA
CIVIL DIVISION

DAVID E. WAYS,

    Plaintiff;

v.

CASE NO.: 12CA05622

IAIN S. ROACHE, CHARLES MELVIN,
ABRAXAS PARTNERS, LLP, DOMAIN
CAPITAL, LLP, FAMOUS FOUR MEDIA
LIMITED, and DOMAIN VENTURE
PARTNERS PCC LIMITED;

    Defendants.

_____/

## COMPLAINT

Plaintiff DAVID E. WAYS, by and through his undersigned counsel, hereby sues defendants IAIN S. ROACHE, CHARLES MELVIN, ABRAXAS PARTNERS, LLP, DOMAIN CAPITAL, LLP, FAMOUS FOUR MEDIA LIMITED, and DOMAIN VENTURE PARTNERS PCC LIMITED; and alleges:

### Jurisdiction and Venue

1.    This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs and interest. This Court has subject matter jurisdiction, pursuant to Fla. Stat. § 26.012.

2.    Venue is appropriate in the Twelfth Judicial Circuit, as this cause of action accrued in Manatee County, Florida.

### Parties

3.    Plaintiff DAVID E. WAYS ("Mr. Ways") is an individual, and has at all times relevant to this action, resided in Manatee County, Florida.

4.    Defendant IAIN S. ROACHE ("ROACHE") is, on information and belief, a resident of the country of Spain, and works in the country of Gibraltar.

5. Defendant CHARLES MELVIN ("MELVIN") is, on information and belief, a resident of the country of Gibraltar.

6. Defendant ABRAXAS PARTNERS, LLP ("ABRAXAS") was, on information and belief, a foreign limited liability partnership established under the laws of the United Kingdom.

7. Defendant DOMAIN CAPITAL, LLP ("DOMAIN CAPITAL") was allegedly, on information and belief, foreign limited liability partnership established under the laws of the United Kingdom.

8. Defendant FAMOUS FOUR MEDIA LIMITED ("FAMOUS FOUR") is, on information and belief, foreign company established under the laws of Gibraltar.

9. Defendant DOMAIN VENTURE PARTNERS PCC LIMITED ("DOMAIN VENTURE") is, on information and belief, foreign limited liability company established under the laws of Gibraltar.

## General Allegations

10. In or about 2010, the Internet Corporation for Assigned Names and Numbers (ICANN), which is the corporate body through which internet domain names are assigned and registered, was finalizing its guidebook to begin to accept applications for new generic Top Level Domains (gTLD) to be used on the World Wide Web along with the traditional top level domains of .com, .org, .gov, etc.

11. On or about June 24, 2010, Plaintiff Mr. Ways contacted VeriSign, Inc. as he sought to apply for a new generic Top Level Domain (gTLD) referred to as DotBIM (.bim), and was given the name of Mr. Iain S. Roache ("ROACHE"), as a potential funding source.

12. On information and belief, ROACHE had held himself and his companies out to VeriSign, Inc. as a finance and management company versed in the processing and financing of ICANN applications for top level domains, prompting the referral to Mr. Ways.

13. Upon contacting ROACHE, Mr. Ways was assured by ROACHE that ROACHE and his entities were experienced and reputable providers of application preparation, management, and financing for top level domains.

14. On September 4, 2010, ROACHE, purporting to be Managing Director of Abraxas Partners, LLP ("ABRAXAS") prepared the "DotBIM Arrangement Letter." A true and correct copy of the foregoing is attached hereto as **Exhibit "A."**

15. ROACHE informed Mr. Ways that he would need to procure more than a minimum of approximately $24,000 in "seed money" for an 8% stake in the project. In order to secure this "seed money," ROACHE made representations as to the experience and expertise of himself and the companies he purported to represent; ABRAXAS, DOMAIN CAPITAL,(and later) FAMOUS FOUR, and DOMAIN VENTURES (together: the "RICO ENTERPRISES").

16. ROACHE knowingly made false and fraudulent representations to Mr. Ways regarding the work and services to be performed by ROACHE and the RICO ENTERPRISES in exchange for the "seed money," as well as the salary and other compensation to be paid Mr. Ways as the CEO of DotBIM LLP—an entity to have been created by ROACHE and the RICO ENTERPRISES for owning the ".bim" domain registry.

17. In or about November, 2010, ROACHE was notified of the imminent dissolution of ABRAXAS with the Companies House (the British clearing house and registry of corporate entities) for failure to maintain and file proper records. Without notifying Mr. Ways, ROACHE continued to conduct business under the ABRAXAS name as though it were a going concern.

18. ROACHE also sent an email to Mr. Ways providing what purported to be an executive summary of the Domain Capital, LLP fund. However, Domain Capital, LLP is a fictitious company that never existed (neither as an entity nor as a registered fictitious name). On information and belief, the sole purpose of representing to Mr. Ways the executive summary of a fictitious company was to deceive Mr. Ways into believing his funds were secure and to induce Mr. Ways to wire additional funds and to encourage others to wire funds as well.

19. At various times, fraudulent promises, assurances, and updates were provided by ROACHE on behalf or through each of the RICO ENTERPRISES.

20. In addition, ROACHE coordinated with defendant MELVIN to send to Mr. Ways false statements and to give Mr. Ways the false impression that ROACHE and the RICO ENTERPRISES were engaged in legitimate and legal activities by holding MELVIN out as an attorney and counselor.

21.  These continuing representations were made, on information and belief, solely for the purpose of concealing the fraud perpetrated against Mr. Ways and others.

22.  These false and fraudulent statements were made knowingly and with the intention that they would induce Mr. Ways to wire funds to ROACHE and the RICO ENTERPRISES.

23.  Mr. Ways did, in fact, wire funds to ROACHE and the RICO ENTERPRISES as a result of and in reliance on the false statements made by ROACHE.

24.  In addition to Mr. Ways' own funds, Mr. Ways' family and friends contributed funds to ROACHE and the RICO ENTERPRISES on Mr. Ways' behalf.

25.  As of January, 2011 the total amount wired to ROACHE and the RICO ENTERPRISES as a result of ROACHE's fraudulent statements was approximately $122,395.64.[1] Mr. Ways has subsequently demanded return of these funds, which ROACHE and the RICO ENTERPRISES have refused.

## Count I – Breach of Contract

26.  Mr. Ways hereby realleges the foregoing paragraphs numbered 1 through 25 and reincorporates same as though set forth in full herein.

27.  This is an action for Breach of Contract against defendants ROACHE and the RICO ENTERPRISES.

28.  ROACHE and the RICO ENTERPRISES made promises and assurances of services to be performed, including:

    a.  Preparation, registry, and management of DotBIM, LLP on behalf of Mr. Ways.

    b.  Preparation and organization of application to ICANN for registry and assignment of the .bim domain to DotBIM, LLP.

    c.  The work was to have been undertaken by ROACHE and the RICO ENTERPRISES and concluded by October, 2010.

---

[1] This amount represents the £77,133.73 wired to ROACHE and the RICO ENTERPRISES converted to US Dollars at rate of .6428 dollars to British Pound Sterling in January, 2011.

    d.    Mr. Ways was to become a full time employee of DotBIM LLP no later than January, 2011.

    e.    Mr. Ways was promised employment and compensation as CEO of DotBIM, LLP once underwriting was concluded and Mr. Ways was assured that this would occur most likely by the end of November, 2010 (and in no case later than the second week of January, 2011).

    f.    DotBIM, LLP was to fund an annual base compensation for Mr. Ways of $100,000 plus a guaranteed bonus of $100,000 once the DotBIM registry license is granted and subsequent year-bonuses of $80,000 per year.

    g.    Mr. Ways was guaranteed a role on the Board of Directors and the governance committee for the DotBIM registry.

    h.    Mr. Ways was guaranteed a non-callable loan of $100,000 to match the additional investments he and his family and friends made.

    i.    Mr. Ways was guaranteed the opportunity to sell a portion of the seed equity at the GBP 4.3 million valuation of the DotBIM bid vehicle.

29. In exchange for the foregoing promises and assurances, and in reliance thereon, Mr. Ways agreed to provide approximately $123,000 in "seed money" in combination of personal funds and funds of family and friends.

30. Mr. Ways did, in fact, timely provide the seed money as promised.

31. Despite and contrary to its assurances and promises, ROACHE and the RICO ENTERPRISES undertook none of the tasks it agreed to provide.

32. On information and belief, ROACHE and the RICO ENTERPRISES never intended to provide any of the benefits or to perform any of the tasks it promised to Mr. Ways.

33. As a result of this failure, ROACHE and the RICO ENTERPRISES committed a total material and fundamental breach of its contract with Mr. Ways.

34. As a direct and proximate result of the breach by ROACHE and the RICO ENTERPRISES, Mr. Ways has suffered and continues to suffer damages.

**WHEREFORE**, Mr. Ways requests this Court award him the damages caused by defendants ROACHE and the RICO ENTERPRISES; including reasonable attorneys' fees, costs of bringing this action, and such other and further remedies as are provided by law.

### Count II – Deceptive and Unfair Trade Practices

35. Mr. Ways hereby realleges the foregoing paragraphs numbered 1 through 25 and reincorporates same as though set forth in full herein.

36. This action is brought pursuant to Florida Deceptive and Unfair Trade Practices Act; Fla. Stat. § 501.202, *et seq.* ("FDUTPA").

37. ROACHE and the RICO ENTERPRISES knowingly made fraudulent misrepresentations to Mr. Ways regarding their business practices and service offerings.

38. These fraudulent misrepresentations were made with the intent that Mr. Ways would himself wire money and cause others to wire money on his behalf to ROACHE and the RICO ENTERPRISES.

39. ROACHE and the RICO ENTERPRISES intentionally deceived and misled Mr. Ways in violation of Fla. Stat. § 501.204 by refusing and failing to provide any service as promised. Further, ROACHE and the RICO ENTERPRISES actively sought to conceal and camouflage the true nature of their businesses and services so the defendants' conduct would not be discovered prior to wiring funds in reliance thereon.

40. Mr. Ways is entitled to reasonable attorneys' fees and costs in bringing this action under Fla. Stat. § 501.2105 due to the manner in which ROACHE and the RICO ENTERPRISES intentionally deceived him.

41. Defendants ROACHE and the RICO ENTERPRISES are jointly and severally liable under FDUTPA, as Florida courts have recognized:

> [I]t has long been the law in Florida that in order to proceed against an individual using a FDUTPA violation theory an aggrieved party must allege that the individual was a direct participant in the improper dealings. *See Anden v. Litinsky*, 472 So.2d 825 (Fla. 4th DCA 1985); *General Dev. Corp. v. Catlin*, 139 So.2d 901 (Fla. 3d DCA 1962); *see also Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984) (noting that it is unnecessary to pierce the corporate veil because the individual defendant was a direct participant in the dealings), *review denied*, 461 So.2d 114 (Fla.1985). More recently in *Aboujaoude v.*

*Poinciana Development Company II,* 509 F.Supp.2d 1266, (S.D.Fla.2007), the court commented:

> FDUTPA makes unlawful "[u]nfair methods of competition or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. (1981). In order to proceed against an individual for a violation of FDUTPA, a plaintiff must allege that the individual was a direct participant in the dealings.

*Id.* at 1276-77 *(citations omitted).*

*KC Leisure, Inc. v. Haber,* 972 So.2d 1069, 1074 (Fla. 5th DCA 2008).

42. As a result of the unfair and deceptive trade practices heretofore utilized by ROACHE and the RICO ENTERPRISES, Mr. Ways has suffered damages.

**WHEREFORE,** Mr. Ways requests this Court award him the damages caused by defendants ROACHE and the RICO ENTERPRISES; including reasonable attorneys' fees and costs of bringing this action and such other and further remedies as are provided by law.

### Count III – Fraud in the Inducement

43. Mr. Ways hereby realleges the foregoing paragraphs numbered 1 through 25 and reincorporates same as though set forth in full herein.

44. This count is pled in the alternative.

45. In order to affect a transfer of funds from Mr. Ways, ROACHE and the RICO ENTERPRISES made false statements of material fact as to the nature and quality of services it offered to render.

46. These statements were made by ROACHE and the RICO ENTERPRISES, who knew that the statements were false at the time they were made.

47. Further, the statements were made by ROACHE and the RICO ENTERPRISES for the specific purpose of inducing Mr. Ways to act upon them—to wit; to wire nearly $123,000 despite the fact that ROACHE and the RICO ENTERPRISES never intended to perform any services in exchange for those funds.

48. Mr. Ways did, in fact, rely upon false statements of material fact made by ROACHE and the RICO ENTERPRISES in wiring funds.

49.     As a direct and proximate result of its reliance on false statements by ROACHE and the RICO ENTERPRISES, Mr. Ways has been damaged.

**WHEREFORE**, Mr. Ways requests this Court award him the damages caused by defendants ROACHE and the RICO ENTERPRISES; including reasonable attorneys' fees and costs of bringing this action and such other and further remedies as are provided by law.

### Count IV – Civil Conspiracy

50.     Mr. Ways hereby realleges the foregoing paragraphs numbered 1 through 25 and reincorporates same as though set forth in full herein.

51.     ROACHE and MELVIN, along with unknown directors and officers of the RICO ENTERPRISES, conspired to fraudulently obtain wire transfers using the internet, telephone, and/or mail system.

52.     This conspiracy, on information and belief, was engaged in order to target not only Mr. Ways but also a number of other international investors, as well.

53.     In furtherance of this conspiracy, ROACHE and MELVIN each undertook to knowingly make false and fraudulent statements to Mr. Ways.

54.     As a result of this conspiracy, ROACHE, MELVIN, and the RICO ENTERPRISES wrongfully obtained and converted funds to its own use and purpose.

55.     As a direct and proximate cause of this conspiracy, Mr. Ways has suffered and continues to suffer damages.

**WHEREFORE**, Mr. Ways requests this Court award him the damages caused by defendants ROACHE and the RICO ENTERPRISES; including reasonable attorneys' fees and costs of bringing this action and such other and further remedies as are provided by law.

### Count V – Civil RICO (18 U.S.C. §§ 1961-1968)

56.     Mr. Ways hereby realleges the foregoing paragraphs numbered 1 through 25 as well as 51 through 55 and reincorporates same as though set forth in full herein.

57.     This is an action for violation of 18 U.S.C. §§ 1961-1968 *et seq.*, ("Civil RICO").

58. This Court has original and concurrent jurisdiction over Civil RICO actions. *Tafflin v. Levitt*, 493 U.S. 455 (1990)

59. ROACHE, through the fraudulent use of the RICO ENTERPRISES, violated the provisions of Civil RICO by engaging in "racketeering activities" as defined in 18 U.S.C. 1961 through his engagement in wire fraud (section 1343) and financial institution fraud (section 1344).

60. Mr. Ways has been damaged by ROACHE, who conducted the affairs of an enterprise affecting interstate commerce through a pattern of "racketeering" in violation 18 U.S.C. § 1962(c), and was financially harmed directly by a predicate act—to wit; the procurement of wire fraud.

61. Civil RICO provision 18 U.S.C. § 1964(c) vests private litigants, like Mr. Ways, with authority to sue for treble damages for injury to their business or property.

**WHEREFORE**, Mr. Ways requests this Court award him the damages caused by defendants ROACHE and the RICO ENTERPRISES; including reasonable attorneys' fees and costs of bringing this action, trebled damages, and such other and further remedies as are provided by law.

August 22, 2012.

ICARD, MERRILL, CULLIS,
TIMM, FUREN & GINSBURG, P.A.
2033 Main Street, Suite 600
Sarasota, Florida 34237
Phone: (941) 366-8100
Facsimile: (941) 366-6384

JOSEPH M. HERBERT, ESQUIRE
Florida Bar No. 084260
jherbert@icardmerrill.com
*Attorney for Plaintiff*